**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT ALLEN McNEIL-EL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **DAVID DIGULIELMO, ET AL.** | : | |
| **Defendants.** | : | **NO. 06-0577** |

**MEMORANDUM AND ORDER**

PRATTER, DISTRICT JUDGE                                                    MAY 30, 2007

In this case the Court has been presented with a state prisoner's host of arguments

concerning his treatment at the hands of prison officials.  Once procedurally and substantively

parsed, this prisoner's objections to his treatment do not rise to the level of actionable conduct

for the reasons explained below.

Plaintiff Robert Allen McNeil-El initiated this 42 U.S.C. § 1983 action against David

Digulielmo, Superintendent of the State Correctional Institution at Graterford, Pennsylvania,

Deputy Superintendent Michael Lorenzo and Corrections Officers White and Soto.[1]  Mr.

McNeil-El filed his original Complaint in February 2006, and the defendants, including several

individuals in addition to those named above, promptly moved to dismiss the Complaint.[2]  Mr.

---

[1] It is not entirely clear whether Mr. McNeil-El intended to sue the named individuals in their official, as well as individual, capacities.  However, the Amended Complaint will be dismissed pursuant to the Eleventh Amendment as to the individual Defendants to the extent they were sued in their official capacities.  See Will v. Mi. Dep't of State Police, 491 U.S. 58, 71 (1989) (suit against state official in his official capacity is a suit against the official's office and is no different from a suit against the state itself). The Commonwealth of Pennsylvania has not waived its Eleventh Amendment rights.  See 42 Pa. Const. Stat. Ann. § 8521(b).

[2] The initial Complaint (Docket No. 3) also included prison officials and corrections officers Beard, Williamson, Fairall, Buzzar, Field, Ulisny and Vaughn.  When Plaintiff moved for leave to amend his complaint, his proposed amended complaint only named DiGuglielmo,

McNeil-El had also moved for the Court to appoint counsel to represent him in this matter.

Mr. McNeil-El then moved for leave to submit an amended complaint.  He indicated that he intended to withdraw his claims against several of the defendants.  The Court granted the motion, and, consequently, denied the Defendants' then-pending motion to dismiss without prejudice.  The Court also denied Mr. McNeil-El's motion to appoint counsel without prejudice, advising him that he could re-file that motion once he properly filed an amended complaint.

Thereafter, Mr. McNeil-El filed an Amended Complaint (Docket No. 27), and again requested the Court to appoint counsel (Docket No. 26).  The Defendants moved to dismiss the Amended Complaint (Docket No. 28).  Notwithstanding his request to appoint counsel, Mr. McNeil-El submitted a pro se opposition to the motion to dismiss the Amended Complaint (Docket No. 29), as well as two pro se responses to certain declarations submitted by Defendants in support of their motion (Docket Nos. 32–33).

For the reasons discussed below, the Motion to Dismiss will be granted, Mr. McNeil-El's Amended Complaint will be dismissed in its entirety, and his Motion to Appoint Counsel will be denied.

## FACTUAL BACKGROUND

 Mr. McNeil-El is a prisoner at S.C.I.–Graterford.  He alleges that on or about August 4, 2005, Officers White and Soto, at the direction of Deputy Warden Lorenzo, searched his prison cell and seized the following items:

---

Lorenzo, Vaughn, Soto and White as defendants. Consequently, the Court terminated this action as to defendants Beard, Williamson, Fairall, Buzzar, Field and Ulisny (Docket No. 23). However, Plaintiff's Amended Complaint as filed does not name Vaughn as a defendant or otherwise mention him.  Therefore, Vaughn will be terminated as a defendant as well.  The only remaining defendants in this action are Digulielmo, Lorenzo, White and Soto.

> [A] [sic] explanation sheet, lien documents, UCC forms, UCC1 financial
> statements, memorandums [sic] of law, affidavits of Sovereignty, billing
> statements against the Department of Correction, documents in relations [sic] with
> UCC, UCC1, UCC4, UCC11, and matters of appellate procedures pending in the
> United States Apellate [sic] Courts via <u>McNeil-El-vs. DiGuGlielmo</u> [Court of
> Appeals Docket No. 05-3206 and District Court Docket No. 05-1828].

Am. Compl. ¶ 10.  He claims that Officers White and Soto read all of these documents and then

confiscated them.  Mr. McNeil-El claims that the Defendants' actions violated his rights

protected by the First, Fourth, Eighth and Fourteenth Amendments to the United States

Constitution.  Am. Compl. ¶ 8.

Defendants moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Specifically,

Defendants argue that the Amended Complaint fails to state a claim under 42 U.S.C. § 1983 for a

deprivation of rights secured by the Constitution.  Defendants also argue that Mr. McNeil-El

failed to exhaust administrative remedies before filing suit in federal court as required by 42

U.S.C. § 1997e(a).

## DISCUSSION

## I.    Standard of Review

### A.    *Motion to Appoint Counsel*

An indigent civil litigant possesses neither a constitutional nor a statutory right to

appointed counsel.  <u>Gordon v. Gonzalez</u>, No: 04-4623, 2007 U.S. App. LEXIS 9922, at *6 (3d

Cir. 2007).  With respect to lawsuits filed by prisoners, the appointment of counsel is a matter for

the Court's discretion.  <u>See</u> 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to

represent any person unable to afford counsel.").  The Court has broad discretion to determine

whether appointment of counsel is warranted, which determination is made on a case-by-case basis.  Tabron v. Grace, 6 F.3d 147, 155 n.4, 157-58 (3d Cir. 1993).  In considering whether to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim."  Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).  If the plaintiff's claim has "arguable merit in fact and law," the court will then consider certain additional factors.  Id.  This Court will consider whether the plaintiff is able to present his or her case, taking into consideration the plaintiff's education, literacy, prior work experience, prior litigation experience, ability to understand English, and, if the plaintiff is a prisoner, the restraints placed upon him or her by confinement.  Id. at 156.  "If it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel."  Id.

In determining whether appointment of counsel is appropriate, the Court must consider the difficulty of the particular legal issues, the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation, the extent to which prisoners and others in confinement may face problems in pursuing their claims, and the extent to which the claims are likely to require extensive discovery and will require compliance with complex discovery rules.  Id.  In addition, appointment of counsel may be justified when a case is likely to turn on credibility determinations, or when a case will require testimony from expert witnesses. Id.

      B.    *Rule 12(b)(6)*

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments.

4

<u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1251, 1261 (3d Cir. 1994).  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  <u>Angelastro v. Prudential-Bache Sec., Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985).  A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts germane to the claim that could be proved by the plaintiff. <u>Ransom v. Marrazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988).  Courts can consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record, including government agency records and judicial proceedings.  <u>See</u> <u>S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.</u>, 181 F.3d 410, 426 (3d Cir. 1999); <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).

In addition, pursuant to 28 U.S.C. § 1915(e), the Court must review a civil complaint filed by a prisoner against a governmental entity or employee and must dismiss the case at any time if the Court determines that the action is (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); § 1915A; 42 U.S.C. § 1997e(c).

## II.     Exhaustion of Available Administrative Remedies

Defendants argue that Mr. McNeil-El failed to exhaust the administrative remedies available to him as required by 42 U.S.C. § 1997e(a).  Recognizing the need to address the large number of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. §§ 1997e <u>et</u> <u>seq.</u>  The PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures before filing suit.  <u>See</u> 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(a).

The exhaustion provision of the PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  However, if on its face, a prisoner's claim is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies."  42 U.S.C. § 1997e(c)(2).

The Supreme Court has held that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  Jones v. Bock, 127 S. Ct. 910, 921 (2007) ("[T]here is no basis for concluding that Congress implicitly meant to transform exhaustion from an affirmative defense to a pleading requirement by the curiously indirect route of specifying that courts should screen PLRA complaints and dismiss those that fail to state a claim.").  The Supreme Court has also held that the PLRA requires "proper exhaustion."  Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006).  That is, an inmate must comply with all administrative procedures – including prison grievance procedures – that are available within the relevant prison system, "and not merely wait until there are no administrative remedies 'available.'"  Williams v. Beard, 482 F.3d 637 (3d Cir. 2007) (citing Woodford, 126 S. Ct. at 2387-93).

The Pennsylvania Department of Corrections follows the Inmate Grievance System Policy, DC-ADM 804 ("Grievance Policy").  This policy provides for a three-tier grievance procedure.  First, an inmate can file an initial grievance in writing to a Grievance Coordinator within 15 working after an incident occurs.  Grievance Policy § VI.A.8.  Next, if the inmate is

dissatisfied with the response, he may file a first appeal to the "facility manager," in this case the superintendent of the prison, within 10 working days of the Grievance Coordinator's initial decision.  Id. § VI.C.1.b.  The superintendent must respond within 10 working days of the appeal.  Id. § VI.C.2.b.  If the inmate is dissatisfied with the superintendent's response, he may file a second and final appeal to the Secretary's Office of Inmate Grievance and Appeals within 15 working days after the date of the superintendent's decision.  Id. § VI.D.1.b.

In this case, Defendants aver that Mr. McNeil-El timely filed an initial grievance relating to the August 4, 2005 search of his cell and the seizure of documents from it.  The Grievance coordinator received the initial grievance on August 9, 2005 and recorded it as Grievance No. 126002.[3]  Defendants further aver that on or about August 15, 2005, Mr. McNeil-El received a response that explained the reasons for the search and seizure and gave Mr. McNeil-El an opportunity to object to the seizure of specific documents.  S. Burks Decl. Ex. B.  Defendants claim that Mr. McNeil-El did not appeal to the superintendent, as required by the Grievance Policy, but instead attempted to appeal directly to the Secretary's Office (i.e., he skipped step two and attempted to advance to step three).  At the top of the page of his submission, Mr. McNeil-El stated that "This is my reply to the answer to my grievance #126002."  W. Moyer Decl., attachments.  The Secretary's Office responded on September 1, 2005, by letter to Mr. McNeil-El, informing him that he could not appeal to it until after he had properly appealed to

---

[3] Defendants submitted a declaration of Wendy Moyer, who is the Inmate Grievance Coordinator at S.C.I. Graterford.  Ms. Moyer attests to receiving Mr. McNeil-El's initial grievance on August 9, 2005.  W. Moyer Decl. ¶ 4.

the superintendent.  S. Burks Decl. Ex. C.[4]  Mr. McNeil-El then submitted a document, which

appears to be a copy of the same "reply" that he had submitted to the Secretary's Office, to the

Grievance Coordinator.  However, the Grievance Coordinator returned this submission to Mr.

McNeil-El, with a note written on it stating, "if this is an appeal, you need to indicate so at the

top of the page – per DC ADM 804."  Id.

It seems that Mr. McNeil-El must have eventually filed an appeal (that was at least

proper in form), because on December 1, 2005, the Superintendent rejected the appeal as

untimely.  It is unclear when Mr. McNeil-El submitted this appeal, but pursuant to the Grievance

Policy, an appeal must be submitted within 10 days of the Grievance Coordinator's response.

Mr. McNeil-El received this response on or about August 12, 2005, and Defendants aver that

because the Superintendent's response was rendered on December 1, Mr. McNeil-El's appeal

must have been filed long after the 10-day filing period expired.[5]   It appears, based on the

documents that have been presented to the Court at this stage, that Mr. McNeil-El did not appeal

any further.

---

[4] Defendants submitted a declaration of Sharon M. Burks, who is the Chief Grievance Coordinator of the Secretary's Office.  Ms. Burks' job is review "final" appeals, once an inmate as filed an initial grievance, filed a first appeal with the prison superintendent, and then filed a final appeal with the Secretary's Office.  Ms. Burks attests that her office received a certain document from Mr. McNeil-El, but that she did not consider it a valid "final" appeal because Mr. McNeil-El had not properly complied with the intermediate step of appealing his initial Grievance to the prison superintendent.  S. Burks Decl. ¶ 3.

[5] It appears that Mr. McNeil-El's eventual appeal is "missing" from the prison's files.  W. Moyer Decl. ¶ 5.  Ms. Moyer avers that Mr. McNeil-El must have submitted an appeal sometime between September 19, 2005, when she received his "reply" letter, and December 1, 2005, when the superintendent returned Mr. McNeil-El's appeal for failing to comply with the Grievance Policy.  Id.  Ms. Moyer further avers that she "believe[s] that the Superintendent received the appeal within ten working days before December 1, 2005, because the Superintendent responds to grievance appeals within ten working days after he receives them."  Id.

In sum, it would seem that although Mr. McNeil-El timely filed a grievance complaining about the August 4, 2005 incident, once that Grievance was denied, he did not comply with the proper procedures for an appeal, and the prison authorities never considered any of his attempted "appeals" on the merits.  Accordingly, Defendants argue that Mr. McNeil-El has not exhausted this remedy, and, therefore, that the claims he has presented in the instant suit are barred.

Failure to exhaust administrative remedies is an affirmative defense, and the defendant bears the burden of pleading and proof.  See Jones v. Bock, 127 S.Ct. at 921; Booth v. Loreno, 02-6752, 2007 U.S. Dist. LEXIS 36485, at *22-23 (E.D. Pa. May 17, 2007) (unpublished).  Mr. McNeil-El claims to have exhausted all required administrative remedies prior to bringing this lawsuit.  Am. Compl. ¶ 6.  However, his Amended Complaint does not specify which, if any, procedures he followed in exhausting such remedies.  He merely included the file number of the one grievance that he allegedly filed (No. 126002).  Id.

The Court must accept all material factual allegations in the Amended Complaint as true and construe them in the light most favorable to Mr. McNeil-El.  To give Mr. McNeil-El the benefit of the doubt he is due at the motion to dismiss phase, the Court concludes that the exhaustion issue is not ripe for decision.  At least minimal discovery would be needed to determine whether Mr. McNeil-El followed the proper grievance procedures in submitting his initial grievance and the various "appeals" such that he exhausted all available remedies.  For the Court to determine this issue now, Defendants' motion to dismiss would have to be converted to a motion for summary judgment.  Defendants have come forward with declarations of prison officials that, if such declarations and attached exhibits presented a complete and accurate record, could permit the Court to rule on this issue in the context of summary judgment.

The Court is not convinced, however, that the Defendants have presented a complete record.  It appears, for example, that Mr. McNeil-El did, at some point during this process, attempt to comply with all three phases of the grievance process.  He submitted an initial Grievance, an appeal of some sort to the superintendent, and an appeal of some sort to the Secretary's Office, albeit possibly not in the proper order and/or not within the permitted time limits.  The documents submitted by Defendants, including the declarations submitted by the various prison officials, indicate that Mr. McNeil-El's submission with respect to the two appeals phases were deficient in various ways, including untimeliness.  However, at least one document – Mr. McNeil-El's first appeal to the superintendent – is "missing" from the prison files.  Moreover, there is some ambiguity and uncertainty as to the timing of his submissions as reflected in the declarations of various officials.  Therefore, the Court does not know when Mr. McNeil-El actually submitted this appeal, the substance of the appeal, or, if Mr. McNeil-El did in fact submit this appeal after the 10-day filing requirement expired, whether he notified the superintendent of the delay and explained his reason, if any, for the delay.  See Grievance Policy § VI.C.2.a. (noting exceptions to the 10-day filing requirement).  The Court cannot decide this issue after hearing only one side of the story.  It is the Defendants' burden to prove that Mr. McNeil-El did not exhaust the available remedies, and Defendants cannot satisfy that burden simply by providing the prison officials' various *responses* to a prisoner's grievances.  An important part of satisfying that burden is to provide the *prisoner's actual submissions*, and to explain why those submissions were deficient such that the prisoner has failed to exhaust his administrative remedies.

Thus, the Court will not reach a decision regarding Defendant's affirmative defense

10

relating to exhaustion.  However, the Court need not do so in order to dismiss the Amended

Complaint because the Court finds that Mr. McNeil-El has failed to state a claim upon which

relief can be granted.

**III.    Mr. McNeil-El's Constitutional Claims**

Mr. McNeil-El's Amended Complaint alleges generally that the Defendants have

violated his right to be free from cruel and unusual punishment, curtailed his access to the

federal court and violated his due process rights.  A liberal reading of the Amended Complaint

indicates that Plaintiff's claims implicate the First, Fourth, Eighth and Fourteenth Amendments

to the Constitution.  However, a review of the Amended Complaint compels the conclusion that

Mr. McNeil-El has failed to state a claim upon which relief can be granted as to all of these

potential Constitutional claims.

A.    *The First Amendment – Access to the Courts*

Mr. McNeil-El alleges that the seizure of materials from his prison cell deprived him of

access to the courts.  The First Amendment offers protection for a wide variety of expressive

activities, including access to the courts.  See U.S. CONST. amend I.  Rights under the First

Amendment are "lessened–but not extinguished–in the prison context, where legitimate

penological interests must be considered in assessing the constitutionality of official conduct."

Rauso v. Zimmerman, 3:97-CV-1841, 2006 U.S. Dist. LEXIS 90343, at *13-14 (M.D. Pa. Dec.

14, 2006) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).  To prove a violation of the right of

access to the courts, a prisoner must not only establish that he was denied access to the courts but

also that he suffered actual injury as a result.  Hudson v. Robinson, 678 F.2d 462, 466 (3d Cir.

1982); Rauso, 2006 U.S. Dist. LEXIS 90343, at *13-14; Bacon v. Taylor, 414 F. Supp. 2d 475,

481 (D. Del. 2006).

Plaintiff contends that certain documents seized pertained to his "pending" petition for a writ of habeas corpus, Am. Compl. ¶ 14, and that he was somehow prejudiced in pursuing this petition when certain documents were seized from his cell and confiscated.  A review of the proceeding Mr. McNeil-El refers to in his Amended Complaint, however, reveals that he was not denied meaningful access to the courts in any way.

In April 2005, Mr. McNeil-El filed a petition for writ of habeas corpus in this Court.  In that case, the Honorable John P. Fullam dismissed Mr. McNeil-El's petition with prejudice, found that the petition was frivolous, and denied a certificate of appealability in July 2005.  See Order (Docket No. 7), McNeil v. DiGuglielmo (No. 05-1828) (E.D. Pa. July 21, 2005) (Fullam, J.).  Mr. McNeil-El appealed that decision, filing a notice of appeal in June 2005, and submitting his brief to the Court of Appeals for the Third Circuit on August 3, 2005 – the day before his prison cell was searched and his documents seized.[6]  Therefore, by the time Officers Soto and White searched Mr. McNeil-El's prison cell, he had already enjoyed "access" to the courts, by pursing a habeas petition and appealing an adverse ruling.

On April 14, 2006 the court of appeals denied Mr. McNeil-El's request for a certificate of appealability because he failed to make a substantial showing of the denial of a constitutional right.[7]  In addition, the docket for the Court of Appeals, No. 05-3206, reflects that Mr. McNeil-

---

[6] The Court of Appeals' docket indicates that the certificate of service for Mr. McNeil-El's appellate brief was dated July 30, 2005, which means that he submitted his brief for the court's consideration five days before the August 4, 2005 search.

[7] The Court notes that in his opposition to Defendants' motion to dismiss, Mr. McNeil-El claims that if he had had the materials that the Defendants seized, whatever they may be, he could have substantiated his claims before the court of appeals, which, presumably, could have

El filed a motion for a rehearing <u>en banc</u> with the Court of Appeals, which was denied on May 16, 2006.[8]

Therefore, Mr. McNeil-El had access to the courts to challenge his conviction through adequate habeas corpus review, through an appeal of the district court's decision regarding his habeas petition, and through a petition for a rehearing with respect to his appeal.  Even viewing the evidence in the light most favorable to Mr. McNeil-El, the Court finds no indication that he was denied meaningful access to courts.

      B.     *The Fourth Amendment – The August 4, 2005 "Search and Seizure"*

As discussed above, the Amended Complaint describes an incident in which Officers

---

affected the court's ruling.  The Court disagrees.  As noted above, at the time Mr. McNeil-El's cell was searched, he had already submitted his appellate brief to the court of appeals.  The Court is confident that had the court of appeals required additional information from Mr. McNeil-El, it could and would have asked him for it, and he would have had an opportunity to explain his predicament to the court of appeals at that time.  Moreover, after he had submitted his appellate brief, while his appeal was pending, Mr. McNeil-El did aprise the court of appeals of this exact predicament.  On January 5, 2006, Mr. McNeil-El filed a "Motion to Stay All Proceedings with cause" with the court of appeals, in which he explained that prison officials searched his cell in August 2005 and confiscated documents relevant to his habeas petition and appeal.  Mr. McNeil-El requested the court to stay its decision until his documents were returned, arguing that he could "not respond to or plead" or otherwise pursue his appeal without such materials.  However, this Court can only presume reasonably that the court of appeals considered his situation, but did not require any further input from him, because it denied his request for a certificate of appealability on April 14, 2006, and on April 18, 2006, denied his motion to stay as moot.

[8] In his motion for a rehearing <u>en banc</u>, Mr. McNeil-El did not mention the August 4, 2005 "search and seizure" incident.  The Court also notes that after the court of appeals denied his request for a certificate of appealability, Mr. McNeil-El filed a motion for an extension of time to file a petition for rehearing.  The court of appeals granted his motion, and Mr. McNeil-El timely submitted a petition for rehearing, which was denied.  Given that the court of appeals indulged Mr. McNeil-El's request for additional time to file, and that he was able to file a petition for rehearing, the Court fails to see how Mr. McNeil-El was denied access to the courts with respect to his thorough use of the appeals process.

Soto and White searched Plaintiff's prison cell and seized certain materials.[9]  It is clear, however, that "the Fourth Amendment  proscription against unreasonable searches does not apply within the confines of the prison cell."  Hudson v. Palmer, 468 U.S. 517, 526 (1984).  This is because the traditional notion of a right of privacy "is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."  Id. at 527-28.  The Supreme Court held that "wholly random searches are essential to the effective security of penal institutions," and do not violate an inmate's Fourth Amendment rights.  Id. at 529.  Therefore, Plaintiff's Fourth Amendment claim must fail.

The Supreme Court's Hudson holding specifically noted that even though relief under the Fourth Amendment was not available to an inmate, the inmate is not without a remedy for "calculated harassment unrelated to prison needs," because the Eighth Amendment proscribes "cruel and unusual punishment," and state law remedies are available to redress destruction of personal property claims.  Id. at 530.  The Court will now turn to Plaintiff's Eighth Amendment claims.

C.     *The Eighth Amendment Proscription of "Cruel or Unusual" Punishment*

The Eighth Amendment places restraints on prison officials, including the prohibition of cruel or unusual punishment.  U.S. CONST. amend. VIII; Durham v. Dep't of Corr., 173 F.

---

    [9] It seems clear that certain prison officials searched Plaintiff's prison cell on or around August 4, 2005, and seized certain materials.  After Mr. McNeil-El submitted his initial grievance, the Grievance Coordinator denied his Grievance but also explained that prison officials searched the cells of selected inmates in an effort to find and confiscate Uniform Commercial Code filings because the prison officials suspected that inmates had been filing false liens against members of the prison staff.

App'x 154, 156 (3d Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  In addition, "the Eighth Amendment imposes duties on prison officials, 'who must provide humane conditions of confinement' and make sure that prisoners 'receive adequate food, clothing, shelter, and medical care and must take reasonable measures to guarantee the safety of inmates.'" Id. (quoting Farmer, 511 U.S. at 832).[10]  In this case, Plaintiff's only allegation is that certain of the Defendants entered his prison cell, read certain documents he kept in his cell, and removed such documents from his cell.  Plaintiff does not allege that his health or safety was in any way jeopardized.  Accordingly, this allegation does not give rise to an Eighth Amendment violation.  See id. at 156 (affirming district court's dismissal of prisoner's claims because prison officials' removal of pictures of Elijah Muhammad and Louis Farrakhan from prisoner's cell and utterance of religious slurs did not constitute Eighth Amendment violations).

D.   *The Fourteenth Amendment – Due Process*

The Supreme Court established that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at, 533; Durham, 173 F. App'x at 157.  Without needing to reach the question of whether the prison's search in this case was "authorized" or not, it is clear that "a meaningful postdeprivation remedy" was available to Mr. McNeil-El.  The court of

---

[10]   In the prison setting, the Eighth Amendment's proscription of cruel and unusual punishments prohibits officials from acting with "deliberate indifference" towards a "substantial risk of serious harm to an inmate." Farmer, 511 U.S. at 828, 832-34.  Plaintiff must establish that a prison official knew of and chose to disregard an "excessive risk to inmate health or safety." Id. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); Rauso, 2006 U.S. Dist. LEXIS 90343, at *19-20 (citing same).

appeals has held that the Pennsylvania Department of Corrections' grievance procedure, which is

discussed in detail above, provides an adequate post-deprivation remedy for purposes of the Due

Process Clause.  See Durham, 173 F. App'x at 157; Tillman v. Lebanon County Corr. Facility,

221 F.3d 410, 422 (3d Cir. 2000).  In this case, as noted above, Mr. McNeil-El initiated

Grievance procedures by complaining about the search and seizure of his property immediately

following the incident in question.  In denying his Grievance, the Grievance Coordinator

informed Mr. McNeil-El that he and his property were under investigation regarding certain

UCC frauds, and that his property would remain in custody with the prison's Internal Security

Department pending review and disposition of the investigation.  In addition, the Grievance

Coordinator advised Mr. McNeil-El that:

> In the interim if [sic] any legal documents that were unwittingly confiscated and
> are not related to the UCC investigation will be returned to you.
>
> Furthermore, you have the right to object to the confiscation of your UCC
> documents using the attached "Unacceptable Correspondence Form" or a copy of
> the DC-154A, "Confiscated Items Receipt" to show that you have the right to
> such material and that right is based upon legitimate business or financial
> interests.

S. Burks Decl. Ex. B.  The form attached to the denial of Plaintiff's grievance, "Unacceptable

Correspondence/UCC Related Materials," included the following statement explaining to Mr.

McNeil-El why his materials were confiscated:

> Your correspondence WAS CONFISCATED for the following reason(s):
>
> IT CONTAINED UCC RELATED MATERIAL WHICH IS CONSIDERED
> CONTRABAND.  YOU HAVE TEN (10) DAYS FROM THE DATE OF THIS
> NOTICE TO FILE A WRITTEN OBJECTION TO THE GRIEVANCE
> COORDINATOR ADVISING OF THE LEGAL BASIS AND PURPOSE FOR
> YOUR POSSESSION OF UCC RELATED MATERIAL.
>
> UCC RELATED MATERIAL WILL EITHER BE RETURNED TO YOU UPON

16

ACCEPTABLE EXPLANATION OF A LEGITIMATE PURPOSE OR WILL
BE DESTROYED OR FORWARDED TO THE LEGAL OFFICE FOR
FURTHER REVIEW AND APPROPRIATE ACTION.

Id.  Mr. McNeil-El admits to submitting an initial Grievance immediately following the incident.

It is not clear from the materials presented to the Court for consideration of this motion whether

Mr. McNeil-El availed himself of the opportunity to file a "written objection" to the Grievance

Coordinator, as provided in the "Unacceptable Correspondence" notice quoted above.  It is clear,

however, that the Grievance procedures provided by the Pennsylvania Department of

Corrections, and the process described above specifically related to UCC filings (that permitted

Mr. McNeil-El to formally object to seizure of his UCC-related property) were available to him,

and that such procedures are sufficient for due process purposes.  Therefore, Mr. McNeil-El's

Fourteenth Amendment allegation and claim must fail as well.

**IV.    Mr. McNeil-El's Motion to Appoint Counsel**

As a "threshold matter," the Court has considered the merits of Mr. McNeil-El's claims,

and, as discussed above, the Court has determined that all of his claims lack merit.  Tabron, 6

F.3d at 155. Because Mr.McNeil-El's claims lack any "arguable merit in fact and law," the Court

will deny his motion to appoint counsel.  Id.

CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss will be granted, Plaintiff's

Amended Complaint will be dismissed, and Plaintiff's Motion to Appoint Counsel will be

denied.

S/Gene E.K. Pratter_____
Gene E.K. Pratter
United States District Judge

May 30, 2007

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT McNEIL-EL,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **DAVID DIGULIELMO, ET AL.** | : | |
| **Defendants.** | : | **NO. 06-0577** |

## ORDER

**AND NOW**, this 30th day of May, 2007, upon consideration of Defendants' Motion to Dismiss (Docket No. 28), and Plaintiff's responses thereto (Docket Nos. 29, 32-33), and Plaintiff's Request to Appoint Counsel (Docket No. 26), it is **ORDERED** that:

1.   Defendants' Motion to Dismiss (Docket No. 28) is **GRANTED;**

2.   Plaintiff's Amended Complaint (Docket No. 27) is **DISMISSED**;

3.   Plaintiff's Request to Appoint Counsel (Docket No. 26) is **DENIED**;

4.   Plaintiff's Motion to Compel the Clerk of the Court to Furnish Plaintiff with the Amended Complaint is (Docket No. 30) **MOOT**;

5.   Plaintiff's Motion to Compel the Clerk of the Court to Change the Caption (Docket No. 31) is **MOOT**; and

6.   The Clerk of the Court shall mark this case as **CLOSED** for all purposes, including statistics.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge